1

2

3

4

5

6

7

8                             UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    RANDY SCOTT KLIPPENSTEIN,                    No.  2:21-cv-00086 KJM GGH P

12                   Petitioner,

13          v.                                     FINDINGS AND RECOMMENDATIONS

14    SCOTT FRAUNHEIM,

15                   Respondent.

16

17

18    *Introduction and Summary*

19          Petitioner, a state prisoner proceeding through counsel, has filed an application for a writ

20    of habeas corpus pursuant to 28 U.S.C. § 2254. The matter was referred to the United States

21    Magistrate Judge pursuant to 28 U.S.C. § 626(b)(1) and Local Rule 302.

22          Petitioner was convicted of forcible acts of sexual misconduct, and incest, upon his

23    biological daughter. For purposes of this proceeding, petitioner conceded the incest claims, i.e.,

24    he had sexual relations with his daughter before she reached the age of 18, but he denies that

25    these relations were carried out by force. Petitioner asserts two primary, but related, claims: (1)

26    his Sixth Amendment right to cross examine a witness was violated on account of the inability to

27    cross-examine his daughter about her pre-trial denial of sexual activities (both after petitioner's

28    sexual acts and before); and (2) (assuming his daughter would have remained steadfast at trial in

                                                    1

her denial of prior sexual activities) petitioner's Sixth/Fourteenth/Amendment rights were violated due to the inability to mount a complete defense because of the inability to introduce evidence of his daughter's sexual activities. Petitioner also disputes the admission of Child Sexual Abuse Accommodation Syndrome ("CSAA") evidence, and a jury instruction related thereto.

In sum, because evidence of the sexual activities of the daughter did not evince bias on her part, or otherwise relate to allegations of petitioner's coercive actions, only probable embarrassment, or at worst a falsehood to protect her new teacher love interest *subsequent-to-petitioner's-unlawful-actions,* in this AEDPA case, the trial court's preclusion of the cross-examination was not unreasonable.  It follows that preclusion of admission of extrinsic evidence of prior sexual activities was also not AEDPA unreasonable either. The CSAA claims should be denied as well as not violative of any established Supreme Court holdings and on the merits

*Background Facts*

Prior to trial, petitioner had been charged with lesser unlawful sex with a minor offenses, incest, and more serious forcible sex charges. Perhaps as a method of taking away any potential for a compromise verdict, or because the prosecutor was very confident in the "force" case, the unadorned unlawful sex charges were dropped during trial leaving only the forcible sex charges and incest charges. ECF No. 14-4 at 248-249. The only ultimate contested issue was whether petitioner used force to accomplish the conceded sexual activities. The factual summary of the California Court of Appeal, Third Appellate District ("Court of Appeal") is set forth below:

> The victim, S., is defendant's biological daughter. She lived with her mother for most of her childhood. When she was 15 years old, she moved in with defendant and his family.
>
> After S. turned 17 years old, defendant started commenting on her appearance and constantly asking her if he could see and touch her breasts. S. repeatedly told him "no."
>
> One morning while S. was asleep, defendant came into her room and began touching and kissing her. S. did not kiss him back; she was scared, confused, and hurt. However, she performed oral sex on defendant after he took off all her clothes and continued to touch her. A couple of days later, defendant had sexual intercourse with S. for the first time.
>
> Thereafter, S. and defendant had sexual intercourse more than 100 times and she performed oral sex on him numerous times.

2

Defendant also inserted his finger into S.'s vagina more than 100 times, performed oral sex on her more than 50 times, and stimulated her with a vibrator.

S. repeatedly told defendant "no" or tried to stop him from engaging in sexual acts with her. According to S., defendant held her down and had sexual intercourse with her more than 20 times. S. explained that she was unable to push defendant away and eventually gave up on trying to stop him because he was too big. S. further explained that she was scared and confused by defendant's conduct, and feared that he would kill her if she said no to him while he raped her.

Defendant told S. that he planned to marry her and move with her to Colorado or Montana and have a child together. He also told S. not to tell anyone about their relationship because he would be very upset and end up in jail. At one point, defendant threatened to take S. away from "society" and keep her in a basement.

When S. was 18 years old, she moved out of defendant's house after he physically attacked her. During the attack, defendant pushed S. into a wall and strangled her.

Approximately two months later, S. reported defendant to the police. During a pretext phone call (i.e., a recorded phone call with law enforcement present), defendant admitted to having sex with S. and indicated that he was not going to force himself on her anymore. Defendant also acknowledged that S. had told him multiple times that she did not want to have a sexual relationship with him anymore.

When defendant was interviewed at the police station following his arrest, he denied engaging in a sexual relationship with S. However, during recorded jail phone calls with his wife (Cheryl), defendant admitted to having a sexual relationship with S. He also asked Cheryl to get rid of several items, including a sex toy, an outfit, and lotion.

After defendant was arrested, Cheryl confronted S. about her allegations of force. According to Cheryl, she told S., "You know as well as I do that the relationship was not forced and it was ... not rape." In response, S. said, "Yes" and apologized.

People v. Klippenstein, No. C083373, 2018 WL 3298027, at *1-2 (Cal. Ct. App. July 5, 2018).

*Issues Presented*

    1.   Whether Petitioner Was Denied His Sixth Amendment Right to Fully Confront

        (Impeach) His Accuser With Her Other Sexual Activities;

////

////

3

2. Whether Petitioner's Sixth/Fourteenth Amendment Rights Were Violated When Petitioner Was Not Permitted to Introduce Extrinsic Evidence of the Accuser's Other Sexual Activities;

3. Whether the Admission Of Child Sexual Abuse Accommodation Syndrome Evidence Violated Due Process; and

4. Whether the Jury Instruction Related to the CSAA Evidence Violated Due Process.

*The Antiterrorism and Effective Death Penalty Act of 1996 Standards*

Of course, the issues here are decided not by whether the undersigned believes the state courts to have made an erroneous legal determination, but whether the state courts were unreasonable in their determinations pursuant to 28 U.S.C. § 2254.

The statutory limitations of the power of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The text of § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), clearly established federal law consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 565 U.S. 34, 39 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000)). Circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 569 U.S. 58, 63-64 (2013) (citing Parker v. Matthews, 567 U.S. 37, 48 (2012)). Nor may it be used to "determine whether a particular rule of law is so

4

widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id.

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, supra, 529 U.S. at 412. See also Lockyer, supra, 538 U.S. at 75 (it is "not enough that a federal habeas court, 'in its independent review of the legal question,' is left with a 'firm conviction' that the state court was 'erroneous.' ") "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103.

The court looks to the last reasoned state court decision as the basis for the state court judgment. Wilson v. Sellers, 138 S.Ct. 1188, 1192 (2018). "[Section] 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.' " Harrington, 562 U.S. at 100. Rather, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural

5

1    principles to the contrary." Id. at 99. This presumption may be overcome by a showing "there is

2    reason to think some other explanation for the state court's decision is more likely." Id. at 99-100.

3    Similarly, when a state court decision on a petitioner's claims rejects some claims but does not

4    expressly address a federal claim, a "federal habeas court must presume (subject to rebuttal) that

5    the federal claim was adjudicated on the merits." Johnson v. Williams, 568 U.S. 289, 293 (2013).

6    When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the

7    deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court

8    must review the claim de novo. Stanley, supra, 633 F.3d at 860.

9           The state court need not have cited to federal authority, or even have indicated awareness

10   of federal authority in arriving at its decision.  Early v. Packer, 537 U.S. 3, 8 (2002). Where the

11   state court reaches a decision on the merits but provides no reasoning to support its conclusion, a

12   federal habeas court independently reviews the record to determine whether habeas corpus relief

13   is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853

14   (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional

15   issue, but rather, the only method by which we can determine whether a silent state court decision

16   is objectively unreasonable." Id. at 853. Where no reasoned decision is available, the habeas

17   petitioner still has the burden of "showing there was no reasonable basis for the state court to

18   deny relief." Harrington, 562 U.S. at 98. A summary denial is presumed to be a denial on the

19   merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012). While

20   the federal court cannot analyze just what the state court did when it issued a summary denial, the

21   federal court must review the state court record to determine whether there was any "reasonable

22   basis for the state court to deny relief." Harrington, 562 U.S. at 98. This court "must determine

23   what arguments or theories supported or, [...] could have supported, the state court's decision; and

24   then it must ask whether it is possible fairminded jurists could disagree that those arguments or

25   theories are inconsistent with the holding in a prior decision of this Court." Id. at 102.

26   " 'Evaluating whether a rule application was unreasonable requires considering the rule's

27   specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-

28   by-case determinations.' " Id. at 101 (quoting Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)).

1   Emphasizing the stringency of this standard, which "stops short of imposing a complete bar on

2   federal-court relitigation of claims already rejected in state court proceedings[,]" the Supreme

3   Court has cautioned that "even a strong case for relief does not mean the state court's contrary

4   conclusion was unreasonable." Id. at 102.

5   *Discussion*

6       A. Whether Petitioner Was Denied His Sixth Amendment Right to Fully Confront

7   (Impeach) His Accuser With Her Other Sexual Activities

8       The Court of Appeal set the background for this issue:

> Prior to trial, the People filed a motion in limine seeking to exclude evidence of S.'s prior sexual conduct, unless the court found that such evidence was admissible under Evidence Code sections 782 and 352. Defendant opposed the People's motion and filed a motion seeking permission to question S. regarding an alleged extramarital affair she was having with her former high school teacher, Steven Shields. Defendant also requested permission to question S. about lies she told her employer about the affair. In addition, defendant sought permission to question S. regarding a list she purportedly made of her past sexual partners.
>
> In support of his motion, defendant argued that evidence of the extramarital affair was relevant because it showed that S. had: "(1) engaged in conduct that constitutes moral turpitude and (2) lied when questioned by [her employer] about whether she was having an affair with Steven Shields." Defendant asserted that "engaging in an illicit extra marital affair with a former high school teacher demonstrates conduct that reflects on a person's lack of judgment, general readiness to do evil, bad character, intent to corrupt others and moral depravity. The fact that [S.] lied to [her employer] also demonstrates that [S.] is a person who engages in immoral conduct and lies when confronted about it." Defendant further argued that the list of S.'s past sexual partners was relevant because it would "directly contradict" S.'s statement to the police that she had not had sex prior to her relationship with defendant.
>
> At the hearing on the motions, the trial court treated defendant's motion as a motion brought under Evidence Code section 782. The court rejected defendant's moral turpitude argument and ruled that, even if S. had a sexual relationship with Shields and lied about it to her employer as defendant claimed, such conduct was irrelevant and inadmissible under Evidence Code section 782 because there was no evidence the relationship involved allegations of rape, sexual assault, or incest. The court further ruled that, even assuming such evidence was somehow relevant to S.'s honesty or veracity, the probative value of the evidence was substantially outweighed by the fact that its admission would necessitate undue consumption of time and/or would create a substantial danger of undue prejudice by confusing the issues and misleading the jury. With respect to the list

7

1                    of sexual partners S. purportedly made, the court ruled that, even if such a list existed, the evidence was inadmissible under Evidence Code sections 782 and 352. In so ruling, the court noted that the evidence is "distinguishable from what happened in this case."

The rape shield law generally bars questioning a sexual assault victim about specific instances of her prior sexual conduct. (Evid. Code, § 1103, subd. (c); *People v. Bautista* (2008) 163 Cal.App.4th 762, 781.) "Evidence of the sexual conduct of a complaining witness is admissible in a prosecution for a sex-related offense only under very strict conditions. A defendant may not introduce evidence of specific instances of the complaining witness's sexual conduct, for example, in order to prove consent by the complaining witness." (*People v. Fontana* (2010) 49 Cal.4th 351, 362 (*Fontana* ).) But such evidence may be admissible in prosecutions involving sections 261, 289, and 288a, such as here, when offered to attack the credibility of a complaining witness, provided its probative value outweighs the danger of undue prejudice and the defendant complies with the procedure set forth in  Evidence Code section 782. ( Evid. Code, § 782; *Fontana*, at pp. 354, 362.)

People v. Klippenstein, 2018 WL 3298027, at *2-3.

      The California appellate court went on to find that the pertinence of the sex episodes material to be explored with the accuser on cross-examination did not override the purposes of California's rape shield law because of its minimal relevance.

      It is important to add here that the evidence regarding the specific instance of sex-with-the-teacher was *subsequent* to the time the accuser had permanently left petitioner's home and was living with other persons. The "list of boys" with whom the accuser allegedly had sexual relations (whenever) related nothing specific other than names.

      First, AEDPA applies to the issue herein.  While the focus of the appellate court and parties was specifically dealing with California law, the Court of Appeal found that "[petitioner's] claim that excluding the evidence violated his constitutional rights is unpersuasive." People v. Klippenstein, 2018 WL 3298027, at *4.  Remembering that there is a presumption in AEDPA that the state court decided the claim on its federal merits, and that the court need not have cited to federal authority, see AEDPA discussion supra, it is clear that AEDPA applies to this issue.

      Turning to the merits, it is evident that the denial of cross-examination claim is at its strongest when the proffered impeachment demonstrates a bias on the part of the witness not to

////

8

testify truthfully, not simply to show that a witness told an inconsistent story at some time. The

Ninth Circuit has explicated the established Supreme Court authority on the subject:

> Wood argues that excluding the evidence of M.G.'s sexual conduct violated his rights under the Sixth Amendment to confront the witnesses against him and to present a defense. These rights encompass the rights to cross-examination, *Davis v. Alaska*, 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974), and to present relevant evidence, *Michigan v. Lucas,* 500 U.S. 145, 111 S.Ct. 1743, 1746–47, 114 L.Ed.2d 205, 212 (1991). A defendant has no right, however, to present irrelevant evidence. *United States v. Torres*, 937 F.2d 1469, 1473 (9th Cir.1991), *cert. denied*, 502 U.S. 1037, 112 S.Ct. 886, 116 L.Ed.2d 789 (1992). It is within the trial court's discretion to determine which issues are relevant. *See id*.
>
> Even relevant evidence can be excluded in certain circumstances. The right to present relevant testimony "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973). The Supreme Court has recognized that a state has a legitimate interest in protecting rape victims against unwarranted invasions of privacy and harassment regarding their sexual conduct. *Lucas*, 500 U.S. at ——, 111 S.Ct. at 1146, 114 L.Ed.2d at 212. Also, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on ... cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986).

Wood v. State of Alaska, 957 F.2d 1544, 1549 (9th Cir. 1992).

And, as set forth by Olden v. Kentucky, 488 U.S.227, 231-232 (1988) (emphasis added):

> We emphasized that "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Id.*, at 316–317, 94 S.Ct. at 1110, citing *Greene v. McElroy*, 360 U.S. 474, 496, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959). Recently, in *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), we reaffirmed *Davis*, and held that "a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness.' " 475 U.S., at 680, 106 S.Ct., at 1436, quoting *Davis*, *supra*, 415 U.S., at 318, 94 S.Ct., at 1111.
>
> In the instant case, petitioner has consistently asserted that he and Matthews engaged in consensual sexual acts and that Matthews—

out of fear of jeopardizing her relationship with Russell—lied when
she told Russell she had been raped and has continued to lie since.
It is plain to us that "[a] reasonable jury might have received a
significantly different impression of [the witness'] credibility had
[defense counsel] been permitted to pursue his proposed line of
cross-examination." *Delaware v. Van Arsdall*, *supra*, 475 U.S., at
680, 106 S.Ct., at 1436.

The emphasized quote appears in the seminal case on the right to cross-examination,

Davis v. Alaska, 415 U.S. 308, 315–16 (1974).  In Davis, the juvenile records were sought to be

used as a basis for cross-examination—the witness might be attempting to aid the police and

thereby protect his probation status, id. at 311, and as such demonstrated that the witness had a

motivation to possibly lie about that defendant's activities. Thus, not every untruth by a witness

has a right to be the subject of cross-examination regardless of its real relevance, especially when

the law generally protects such information from exploration at trial.  Rather, the cross-

examination should materially relate to an issue in the case or evince a material bias on the part of

the witness.

In this case, the fairly well established sexual relations of a teacher with a former student,

*after petitioner's involvement with the accuser had ended*, and denied at first by the accuser to her

employer and possibly others,[1] did not demonstrate bias on the part of the accuser against

petitioner which might show that she had a motivation to lie about *petitioner's use of force* to

accomplished his sexual desires.  Rather it showed at most a desire not to embarrass her present

love interest because teachers should not have sexual relations with high school students who

have just turned 18. Nor was the evidence relevant in itself to draw an inference of lack of

petitioner's coercion. In light of the strong California interest to not permit an accuser's sexual

history to be explored unless necessary, it cannot be legitimately argued that exclusion of the

evidence showing the accuser's unrelated untruth, as affirmed by the appellate court, was AEDPA

unreasonable. *Cf.* United States v. Chang Ru Meng Backman, 817 F.3d 662, 670 (9th Cir. 2016)

("Here, by contrast, to the extent that we can discern the nature of Defendant's proffered

---

[1] ECF No. 14-1 at 170-171 (Rouze—Summers employer—only confirms sex with Shields
post-Petitioner abuse); ECF No. 14-1 at 173-174.  (Ms. Shields does not relate anything about
Summer's sex with Mr. Shields prior to, or during, petitioner's abuse—one post-petitioner
explicit incident is set forth).

1  evidence, its relevance, if any, is slight. We doubt that evidence that the victim engaged in

2  commercial sex acts after she had been coerced into prostitution has a bearing on whether

3  Defendant earlier took coercive actions.")  Putting the Chang Ru Meng Backman language in the

4  context of this case: "We doubt that evidence that the victim engaged in [consensual] sex acts

5  after she had been coerced into [having illicit sex with her father] has a bearing on whether

6  [petitioner] earlier took coercive actions." 817 F.3d at 670.

7       Similarly, the fact that a list existed purporting to show past (probably high school) lovers

8  of the accused said little or nothing about the use of force by petitioner, the sole contested issue in

9  petitioner's case.  Again, the apparent purpose of the asserted untruth made to the police by the

10 accuser about not having sexual relations prior to, or along with, petitioner's, was simply in all

11 probability to protect the identities of former sexual partners.  In any event, there was no

12 indication that any of those sexual activities were anything but consensual.

13      The undersigned is not finding that exposing a witness' expressed untruths *per se* has no

14 pertinence whatsoever on credibility. The undersigned is finding that when the law protects

15 sensitive information from disclosure, something more than a general impeachment-on-other-

16 matters purpose is necessary to override the law.  That "something more" is an indication of bias

17 on the part of the witness, or cross-examination which brings to light an untruth directly relevant

18 to an issue in the case. At least such a finding by the state courts is not AEDPA unreasonable.

19      B.  Whether Petitioner's Sixth/Fourteenth Amendment Rights Were Violated When

20 Petitioner Was Not Permitted to Introduce Extrinsic Evidence of the Accuser's Other Sexual

21 Activities

22       This claim is bound to fall as the discussion above generally controls the outcome of

23 this issue.  But first, it is of some doubt that a cognizable claim exists at all as the Supreme Court

24 has fairly recently held that it has never held the preclusion of extrinsic act impeachment evidence

25 to be violative of the Confrontation Clause. In Nevada v. Jackson, 569 U.S.505, 511-512 (2013)

26 (emphasis added) the court held:

27       In holding that respondent is entitled to habeas relief, the Ninth
        Circuit pointed to two of its own AEDPA decisions in which it
28      granted habeas relief to state prisoners who were not allowed to

11

conduct a full cross-examination of the witnesses against them. 688 F.3d, at 1098–1101 (discussing *Fowler v. Sacramento Cty. Sheriff's Dept.*, 421 F.3d 1027, 1035–1038 (C.A.9 2005) and *Holley v. Yarborough*, 568 F.3d 1091, 1098–1101 (C.A.9 2009)). Those cases in turn relied on Supreme Court decisions holding that various restrictions on a defendant's ability to cross-examine witnesses violate the Confrontation Clause of the Sixth Amendment. *See*, e.g., *Olden v. Kentucky*, 488 U.S. 227, 231, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988) (per curiam ); *Delaware v. Van Arsdall*, 475 U.S. 673, 678–679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *Davis v. Alaska*, 415 U.S. 308, 315–316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). *But this Court has never held that the Confrontation Clause entitles a criminal defendant to introduce extrinsic evidence for impeachment purposes. See Delaware v. Fensterer*, 474 U.S. 15, 22, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985) (per curiam ) (observing that "the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to ... expose [testimonial] infirmities through cross-examination"). *See also Jordan v. Warden*, 675 F.3d 586, 596 (C.A.6 2012); *Brown v. Ruane*, 630 F.3d 62, 70 (C.A.1 2011).

However, petitioner points out that he is entitled to present a defense, and the failure to permit such may violate the Fourteenth Amendment Due Process clause.

"[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." *United States v. Scheffer*, 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998); see also *Crane v. Kentucky*, 476 U.S. 683, 689–690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986); *Marshall v. Lonberger*, 459 U.S. 422, 438, n. 6, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983); *Chambers v. Mississippi*, 410 U.S. 284, 302–303, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *Spencer v. Texas*, 385 U.S. 554, 564, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967). This latitude, however, has limits. "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.' " *Crane, supra*, at 690, 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (quoting *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984); citations omitted). This right is abridged by evidence rules that "infring[e] upon a weighty interest of the accused" and are " 'arbitrary' or 'disproportionate to the purposes they are designed to serve.' " *Scheffer, supra*, at 308, 523 U.S. 303, 118 S.Ct. 1261, 140 L.Ed.2d 413 (quoting *Rock v. Arkansas*, 483 U.S. 44, 58, 56, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)).

\* \* \*

While the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence

if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury. See, *e.g.*, Fed. Rule Evid. 403; Uniform Rule of Evid. 45 (1953); ALI, Model Code of Evidence Rule 303 (1942); 3 J. Wigmore, Evidence §§ 1863, 1904 (1904). Plainly referring to rules of this type, we have stated that the Constitution permits judges "to exclude evidence that is 'repetitive..., only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.' " *Crane*, 476 U.S., at 689–690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); ellipsis and brackets in original). See also *Montana v. Egelhoff*, 518 U.S. 37, 42, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996) (plurality opinion) (terming such rules "familiar and unquestionably constitutional").

Holmes v. South Carolina, 547 U.S. 319, 324, 326-27 (2006); see also LaJoie v. Thompson, 217 F.3d 663, 668 (9th Cir. 2000).

Holmes did not involve extrinsic impeachment evidence., but rather evidence of third-party guilt. However, assuming that exclusion of impeachment evidence for a witness can impair a defense as much as not permitting evidence of, for example, third-party guilt, the undersigned finds for the reasons set forth in the section above, that the extrinsic evidence to be produced still lacks sufficient relevance to overcome the California Rape Shield law, i.e., the California Court of Appeal was AEDPA reasonable in upholding its exclusion. Again, after-the-fact sexual activities of the accuser *per se*, when the issue at hand is whether petitioner's prior acts were coercive, shed little, if any, light on the determinative coercion issue. Moreover, the list of high school boys with whom the accuser purportedly had sexual relations either at the time petitioner engaged in sexual activities with the accuser, or prior to such time, have no bearing on whether petitioner, a father—in a much different context than high school boys—used coercion.  The accuser's falsity in stating that she had not had sexual relations prior to those *conceded by petitioner* does not evince a bias to lie about petitioner's coercive activities, nor is it relevant to show the non-existence of forceful or coercive acts in itself.

LaJoie, supra, a case involving child abuse, presents an example of when relevant evidence exclusion may run afoul of Sixth Amendment due process rights.  In LaJoie, evidence of past sexual abuse was precluded by the trial court because of violation of procedural notice rules. However, the Ninth Circuit determined than the preclusion policy behind the notice rules was

13

1    overcome by the relevance of the evidence: "(1) to provide an alternate source of VN's ability to

2    explain sexual acts; (2) to offer an alternative explanation for the medical evidence of abuse that

3    the prosecution would be offering; and (3) to support LaJoie's argument that VN's allegations

4    were false and were invited by CSD caseworkers. LaJoie, 217 F.3d at 665-666.  In the LaJoie

5    case, the defendant was questioning the existence of the criminal acts altogether, the government

6    conceded its relevance, id. at 671, and this alternative evidence could have persuaded the jury to

7    find that the activities of others caused the abuse attributed to defendant.  This type of relevance

8    is lacking in petitioner's case.

9          Moreover, the conclusion by the Court of Appeal here that the proffered evidence would

10    have taken up undue time, and would have been a distraction on the real issue as a reason not to

11    permit such evidence to overcome the policy of the Rape Shield Law, Klippenstein, 2018 WL

12    3298027, at *4, cannot be considered AEDPA unreasonable.

13          For the reasons set forth above, petitioner has not set forth an AEDPA cognizable Sixth

14    Amendment/Fourteenth Amendment claim, or if he as, it should be denied on the merits.

15          C.  Whether the Admission Of Child Sexual Abuse Accommodation Syndrome Evidence

16    Violated Due Process

17          Petitioner claims that the introduction of CSAA evidence was unfairly prejudicial to him.

18    However, the Supreme Court has not announced that the admission of evidence, claimed to be

19    unlawfully prejudicial, violates the Due Process clause.

20                        Under AEDPA, even clearly erroneous admissions of evidence that
                         render a trial fundamentally unfair may not permit the grant of
21                       federal habeas corpus relief if not forbidden by "clearly established
                         Federal law," as laid out by the Supreme Court. 28 U.S.C. §
22                       2254(d). In cases where the Supreme Court has not adequately
                         addressed a claim, this court cannot use its own precedent to find a
23                       state court ruling unreasonable. *Musladin*, 549 U.S. at 77.

24                        The Supreme Court has made very few rulings regarding the
                         admission of evidence as a violation of due process. Although the
25                       Court has been clear that a writ should be issued when
                         constitutional errors have rendered the trial fundamentally unfair,
26                       *see Williams*, 529 U.S. at 375, 120 S.Ct. 1495, it has not yet made a
                         clear ruling that admission of irrelevant or overtly prejudicial
27                       evidence constitutes a due process violation sufficient to warrant
                         issuance of the writ. Absent such "clearly established Federal law,"
28                       we  cannot  conclude  that  the  state  court's  ruling  was  an

                                                    14

1

> "unreasonable application." *Musladin*, 549 U.S. at 77, 127 S.Ct.
> 649. Under the strict standards of AEDPA, we are therefore without
> power to issue the writ on the basis of Holley's additional claims

2

3   Holley v. Yarborough, 568 F.3d 1091, 1101 fn. 2 (9th Cir. 2009) (emphasis added) (noting that if

4   it were free to rule on the issue, the Ninth Circuit would have found a violation of due process).

5      See also Mejia v. Garcia, 534 F.3d 1036, 1046 (9th Cir. 2008); Alberni v. McDaniel, 458

6   F.3d 860, 866 (9th Cir. 2006); Soojian v. Lizarraga, No. 1:16-cv-00254-AWI-SAB-HC, 2018 WL

7   3155617 (E.D. Cal. June 25, 2018); Jones v. Spearman, No. 16-cv-03627-JD, 2018 WL 424402,

8   at *4 (N.D. Cal. Jan. 16, 2018); Garcia v. Madden, No. EDCV 17-00049-DOC-JDE, 2018 WL

9   910184, at *15 (C.D. Cal. Jan. 5, 2018).

10      Holley and its progeny did not hold that if the court believes a serious due process

11   violation exists, it is free to rule on the issue of admission of prejudicial evidence. "Without

12   power to rule" means just that— it does not mean "sometimes has the power to rule and

13   sometimes not." Moreover, the mere characterizing of a prejudicial evidence claim as a

14   fundamentally unfair "due process" violation would render the Holley rule useless, i.e., the claim

15   of admission of prejudicial evidence would be reviewed on the merits, regardless, every time

16   since all due process claims in habeas corpus must rise to the level of fundamental unfairness to

17   be actionable. Again, the Ninth Circuit has held otherwise:

18

> Zapien also argues that the admission of Perez's statements was
> such an egregious violation of California evidentiary law that it

19

> constituted a due process violation. It is not at all clear that there
> was a violation of California law, let alone one so fundamentally

20

> unfair that it amounted to a due process violation. In any event,
> we've held that, "[u]nder AEDPA, even clearly erroneous

21

> admissions of evidence that render a trial fundamentally unfair may
> not permit the grant of federal habeas corpus relief if not forbidden

22

> by clearly established [Supreme Court precedent]." Holley v.
> Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) (internal

23

> quotation marks omitted).

24   Zapien v. Davis, 849 F.3d 787, 794 (9th Cir. 2015).[2]

25      [2] See also Alberni v. McDaniel, 458 F.3d 860, 864 (9th Cir. 2006). The undersigned

26   follows the Holley/Zapien rule. Finally, Kipp v. Davis, 971 F.3d 939, 956 (9th Cir. 2020), is not

27   to the contrary as the court in that case found that AEDPA did not apply. It therefore determined
     the issue de novo and found that McKinney v. Rees, 993 F.2d 1378, 1381-82, 1385-86 (9th Cir.

28   1993) (barring improper propensity evidence), stated the applicable rule on propensity evidence.

1       Thus, it does not matter whether the evidence analysis of the Court of Appeal was spot on,

2   dubious, or unreasonable. No cognizable federal claim exists. Petitioner cites <u>Gimenez v. Ochoa</u>,

3   821 F.3d 1136, 1145 (9th Cir. 2016), for the proposition that the introduction of flawed expert

4   testimony can rise to the level of a due process violation. The <u>Gimenez</u> court specifically found

5   that other *Circuit* authority was the basis for the conclusion: "We join the Third Circuit in

6   recognizing that habeas petitioners can allege a constitutional violation from the introduction of

7   flawed expert testimony at trial if they show that the introduction of this evidence 'undermined

8   the fundamental fairness of the entire trial.' " 821 F.3d at 1145 (citation omitted).  There is either

9   a rule in AEDPA cases that an established Supreme Court holding has been unreasonably applied,

10   or there is not. <u>See</u> <u>Brodit v. Cambra</u>, 350 F.3d 985, 991 (9th Cir. 2003) ("Once again, Petitioner

11   cites no clear Supreme Court law that the California Court of Appeal violated or unreasonably

12   applied [in affirming the use of CSAA evidence].") Without addressing the AEDPA issue, the

13   Ninth Circuit in <u>Gimenez</u> simply joined in the determination of the Third Circuit.  Previous Ninth

14   Circuit cases cannot be overruled by a later panel unless the clearly established law has changed.[3]

15       But perhaps the undersigned has misinterpreted <u>Holley</u> et al. as applying to CSAA

16   evidence.  If that is the case, the Court of Appeal cannot be found AEDPA unreasonable in

17   allowing its introduction. That is not to say that petitioner does not have a point in the abstract.

18   The CSAA evidence is very much "one way"—according to the testimony, there is little chance a

19   child can ever be found not credible as there is a reason why every seemingly inconsistent act

20   with the charge posited by the prosecution is not a problem. Moreover, the accuser/victim in this

21   case was nearly reaching adulthood at the time of her inconsistencies. But the way to combat that

22   is to introduce and argue evidence to make the defense point, not to make an after-the-fact

23   argument.

24   ////

25   ////

26   _____

27       [3] Moreover, the Ninth Circuit has upheld the use of this evidence against a due process attack in <u>Brodit v. Cambra</u>, <u>supra</u>, 350 F.3d at 991 (citing Ninth Circuit authority). <u>See</u> <u>also</u> <u>Otero v. Diaz</u>, No. 2:19cv00381 MCE KJN P, 2020 WL 7406517 (E.D. Cal. Dec. 17, 2020).

28

1       To make a due process argument, petitioner must show that " but for" the CSAA

2 evidence, petitioner would not have been found guilty of the forcible aspects of the charges.

3 Gimenez, supra, 821 F.3d at 1145. In this case, the Court of Appeal found:

4
5
6
7
8
9
10
11
12
13

          Defendant contends the trial court abused its discretion in admitting expert evidence on CSAAS. CSAAS consists of five emotional behaviors that have been observed in children who have experienced sexual abuse: (1) secrecy; (2) helplessness; (3) entrapment and accommodation; (4) delayed disclosure; and (5) retraction. (See *People v. Bowker* (1988) 203 Cal.App.3d 385, 389.) "[E]xpert testimony on the common reactions of child molestation victims is not admissible to prove that the complaining witness has in fact been sexually abused; it is admissible to rehabilitate such witness's credibility when the defendant suggests that the child's conduct after the incident—e.g., a delay in reporting—is inconsistent with his or her testimony claiming molestation. [Citations.] 'Such expert testimony is needed to disabuse jurors of commonly held misconceptions about child sexual abuse, and to explain the emotional antecedents of abused children's seemingly self-impeaching behavior. [¶] The great majority of courts approve such expert rebuttal testimony.' [Citation.]" ( *People v. McAlpin* (1991) 53 Cal.3d 1289, 1300-1301, fn. omitted.)

14                                      \*\*\*

15
16
17
18
19

          We disagree with defendant's contention that CSAAS evidence regarding delayed disclosure was inadmissible under Evidence Code section 352. Defendant argues that, because S. was 17 years old when the alleged abuse occurred, the CSAAS evidence had minimal relevance regarding her delay in reporting the abuse. Defendant further argues that the minimal relevance of the evidence was outweighed by its prejudicial effect; specifically, the substantial danger that the jury would consider the expert testimony about CSAAS as supporting S.'s claims of abuse.

20
21
22
23
24
25
26

          The CSAAS evidence admitted in this case was probative for its limited purpose. It was used to rebut common misperceptions the jury may have held about how children react to being sexually abused. It assisted the jurors in assessing S.'s credibility by placing her behavior in the proper context. At trial, defense counsel attacked S.'s credibility in various ways, including questioning her about her failure to report the assaults earlier. Without the CSAAS evidence on delayed reporting, the jury could have concluded that the abuse did not occur simply because S. failed to report it immediately and continued to have a relationship with defendant. Defendant has made no showing that the probative value of the CSAAS evidence was lessened because S. was 17 years old at the time of the abuse.

27
28

          The evidence's probative value was not outweighed by its prejudicial impact. The CSAAS evidence in this case was properly limited to the syndrome's characteristics, including delayed

disclosure. Dr. Carmichael testified that he was not familiar with the facts of this case. He did not testify that S. was abused. His testimony was limited to explaining the components of CSAAS. We reject defendant's suggestion that the expert testimony invited the jury to conclude S. had been sexually abused in the manner she claimed. In our view, no reasonable juror would interpret Dr. Carmichael's testimony as an expression of opinion on the question whether S. had been sexually abused by force or otherwise. (See *People v. Housley* (1992) 6 Cal.App.4th 947, 955-956 [expert's testimony that he had never met victim, and was unfamiliar with particular facts of case, rendered it unlikely that jury would consider CSAAS testimony for improper purpose].) Moreover, the court instructed the jury twice on the limited manner it could use the CSAAS evidence. The jury was specifically told that CSAAS evidence was not evidence that defendant committed any of the crimes charged against him.

People v. Klippenstein, 2018 WL 3298027, at *5, 7.

This was not just a she said-he said case of coercive sexual abuse. Petitioner had on his side testimony from his former wife that the accuser had told her that the sex was not coercive. Klippenstein, 2018 WL 3298027, at *2. The jury simply did not believe petitioner's testifying witness. Perhaps that was because petitioner had himself admitted in a recorded pretext phone call from the accuser/victim that he had forced himself upon the accuser/victim. Id. It is doubtful that the expert's CSAA testimony in the abstract made all that much difference.

Given this backdrop of legal authority and the facts, the undersigned cannot find that the Court of Appeal was AEDPA unreasonable.

D. Whether the Jury Instruction Related to the CSAA Evidence Violated Due Process

The Court of Appeal's decision is provided as follows:

Defendant contends the trial court's limiting instruction concerning CSAAS (CALCRIM No. 1193) was flawed because the instruction allowed jurors to base its verdict on the assumptions inherent in CSAAS; namely, that the molestation occurred if S.'s conduct was not inconsistent with the conduct of someone exhibiting symptoms of CSAAS. Defendant takes issue with the last sentence in the trial court's instruction that stated the jury could consider CSAAS evidence "only in deciding whether or not S. Doe's conduct was not inconsistent with the conduct of someone who has been sexually abused, and in evaluating the believability of her testimony." We find no instructional error.

As previously indicated, the trial court instructed the jury at the close of trial pursuant to CALCRIM No. 1193 as follows: "You have heard testimony from Dr. Blake Carmichael regarding child

18

1

2

3

4

5

sexual abuse accommodation syndrome. Dr. Blake Carmichael's testimony about child sexual abuse accommodation syndrome is not evidence that the Defendant committed any of the crimes charged against him. You may consider this evidence only in deciding whether or not [S.] Doe's conduct was not inconsistent with the conduct of someone who has been sexually abused and in evaluating the believability of her testimony." (See CALCRIM No. 1193.)

6

People v. Klippenstein, 2018 WL 3298027, at *7.

7

8

9

10

11

12

13

14

Petitioner's challenge to the fairness of the instruction differs little from his challenge that the evidence itself was unfair. The instruction precisely tracked the purpose of the introduction of the evidence. It simply told the jury that it could *consider* the CSAA evidence in evaluating the credibility of the accuser/victim. The jury was not instructed in any type of presumption, nor did the instruction have anything to do with a reversal or diminution of the prosecution's burden of proof. If the evidence was admitted under an AEDPA reasonable rationale, it follows that the jury instruction, limiting the use of the CSAA evidence to evaluating the accuser's testimony, was AEDPA reasonable as well.

15

*Conclusion*

16

17

18

19

20

21

Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons set forth in these findings and recommendations, a substantial showing of the denial of a constitutional right has not been made in this case.

22

Accordingly, IT IS HEREBY RECOMMENDED that:

23

24

1. Petitioner's application for a writ of habeas corpus be denied on its merits and dismissed; and

25

2. The District Court decline to issue a certificate of appealability.

26

27

28

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: March 19, 2021

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE